Next case will be 08-1125 Dippin Dots v. Mosey Thank you, Your Honor. My name is Dan Warren and I represent Dippin Dots, Inc. and Mr. Kirk Jones. We're here on the finding of an exceptional case and an award of $4.2 million in attorney's fees. Last time we were here, this court reversed the finding of fraud on the Patent Office. The court specifically found that there was no affirmative evidence of fraud of intent, no material misrepresentations, and the court disagreed with the district court's characterization of the evidence. We went back on remand to the district court and argued that fees were not appropriate given the reversal of the finding of fraud and also the finding on the level of intent. The district court didn't agree. The fees in this case went from $3 million to $4.2 million. The district court said that although I said fraud the first time I awarded fees, I really meant fraud or inactive conduct. The district court continued that inactive conduct is adequate for an exceptional case. Thus, for the reasons set forth in my earlier order, this is an exceptional case. We submit that the first clear error in this case is the district court ignoring this court's opinion. While the district court certainly has very broad discretion in exceptional case matters, it does not have the discretion to ignore this court. When this court says you've just met the minimum threshold level of intent, the court can't ignore that. It can't ignore the no misrepresentations and no affirmative evidence of intent. The district court just can't shrug it off and say, quote, the court of appeals viewed the evidence somewhat differently than I did, and then just rely on its previous opinion without any further discussion or analysis. The district court, at least it has to accept your guidance. Here, it failed to do so. When you say not egregious, it really shouldn't turn around and say egregious. Doing so... Well, I don't think that this court said not egregious. Not... We made no factual findings of the court of appeals on the previous decision. No, sir. No, sir. And I'm not sure it really matters if what you said the first time was Dippendott's intent did not exceed that minimum threshold or you really just bookmarked it or bookended it. In other words, we know intent is a little bit beyond what you need for an equitable conduct, but it's not fraud. In either case, when the district court evaluates it, it has to come up with something that's consistent with what your opinion is. In other words, I think there's only two ways the district court gets to exceptional case. It either recognizes your opinion and says for these other facts, A, B, C, and D, which are not inconsistent with what the federal circuit said, I find enough intent for exceptional case, or it takes a different path. It says, I don't agree with the level of intent, but here we have, for example, litigation as conduct. In other words, something else beyond just equitable conduct. I think in the previous case, this court found that there was no Walker claim. Yes, sir. Fraud upon patent office. Yes, sir. I found that there was no egregious conduct on the part of Dippendott's at that particular point in time, and the intentional aspect of withholding the testing of the first product, which was outside of the one year. So there was a finding of that effect which was affirmed by this court. Yes, sir. This court did affirm the equitable conduct ruling. In doing so, there were certainly a lot of comments about how the district court characterized the evidence on intent, how you did not agree with that, how you thought that the materiality was just sufficient for a threshold finding of intent, sufficient for equitable conduct. I thought it was sufficient to find that. It was. This court wanted to find that, and it could do so on the record. So it's not as if we told the district court you cannot find an equitable conduct on that particular record. Yes, sir. Again, that has been affirmed. The point we're at is district court in awarding fees, again, didn't take into consideration your characterization of the level of intent. It just said, whatever, back to my original opinion. We'd find that to be error. Now, if you look at district court's language, in awarding fees, it cited the case of S.C. Johnson versus Carter Wallace in fraud. We know the fraud is gone, so it would be interesting to look at S.C. Johnson. District court quoted the case that said the factors we considered are the closeness of the case, the tactics of counsel, the conduct of the parties, and other factors. Now, S.C. Johnson was a remand from this court to the district court. This court said, these are the factors, district court. We want you to look at and discuss in whether or not this is an exceptional case. Here, the court quoted these factors, but it's just a conclusion. We don't know what the district court thought of these factors. If you look at the original 2005 order, it appeared that the other factors were a dip in that sphere. Apparently now, not. Which factors are you referring to in that case? Because under 285, it wasn't finding by the district court that it was an exceptional case and assessed the hearing speeds under section 285. Yes, sir, but the previous order the court referred to this time talked about those four factors I just mentioned and then concluded, quote, none of these factors are sufficient to overcome the jury's finding of fraud. So in other words, whatever these other factors are, at least at one point, they are a dip in that sphere. Now, in this case, the district court simply recites these four factors as magic words without any further analysis. We don't know what the court considered these, and we consider that to be an abuse of discretion. Another problem with not explaining what these other factors may be is that the briefings, the parties are left to guess. For example, is litigation misconduct an issue here? It's really full of allegations of any number of supposed misdeeds, some quite personal. It's difficult to fathom that we're supposed to fight these battles at the appellate level. Now, if... How about the fact that as a result of this lawsuit that was found to be unaccounted, the other side won our business? Is that a factor that he considered? Yes, I think it is a factor. I think it's also a factor that defendants won summary judgment of non-infringement in 2003. They've spent the last six years bringing the inequal conduct charge in the failed antitrust case. The district court stated in the 2005 order that most of the defendants' time since 2003 has been spent on the antitrust issue, the failed antitrust issue. I personally don't see why you'd have to pay for the antitrust. I'm very impressed with the attorney's brief that the antitrust issue is solved. I don't quite understand why there would be an overlap between the patent act and the patent case and the antitrust issues that are coincidental. Well, there's certainly a case law that patent and antitrust issues are intertwined. But if you look at those cases, I think in each and every one of them, the same party won or lost both issues. This is really the first case where the patent case succeeded, antitrust case didn't succeed. So I think there needs to be some analysis of what's appropriate. You said the fact that, quickly, that the defendant went out of business is a factor in the inequal conduct award. Why is that so? Inequal conduct relates to behavior in the patent office. How does the effect on the defendant help? You're on a good point. If we were talking about litigation as conduct, maybe the fact the other side went out of business might be a factor. But in a true inequal conduct analysis, yes, I guess it's not an issue. On that point on the intertwined patent and antitrust claims, I think the Supreme Court in Hensley via Eckhart is instructive. The court said that the degree of success, at least in 1988 claims, is the most critical factor, even with interrelated claims. Now, I know the Fifth Circuit just said, well, that's only one factor to be considered in Louisiana Power. But the Fifth Circuit was clearly on board in the Nijs versus Pearl Vision case where the court said, these awarded must have some relationship damages. And here there are zero damages. So really, regardless of whether litigation as conduct is at stake, it's hard to justify $4.2 million in attorney's fees when the majority of that amount was spent on a no damages antitrust claim, but moreover, a reverse antitrust claim. On the- Defendants receive excellent results, though. I'm sorry? Defendants obtain excellent results in the process. They invalidate the patent. They show an equitable comment to the Patent Office by withholding information. What more do they need to show in order to obtain legally? On the patent side, I think in and of itself, that would probably be enough. But when the majority of the fees at stake were involved in the antitrust claim, you simply cannot award all fees to the other side. But if they're intertwined together, isn't that a problem? I would have thought that your best argument would have been, let's separate those fees out. Let's take out the antitrust fees so that they can be separated out because we won on the antitrust claim. Well, when the first time- There's no argument to that effect as far as that is concerned, is there? No, sir. The first time when the fees were awarded, they were mostly awarded under the antitrust claim. On the second time, it's been to say, no, no, no, we didn't mean all that much money antitrust. It's not X. It's really X. Antitrust is just Y. We really want the bulk majority of it under the Patent Claim. And the district court clearly said the manufacturing party has asked for these fees under the antitrust statute. Now they want the same fees under the patent statute. I'm going to give it to them. There's no balance. The last point I want to make is we also submit that the district court really got the ball wrong. In this case, we've got manipulable conduct with really nothing more than the professional level of intent. We submit that you need something more than just the fact of manipulable conduct to get there, and there's certainly nothing more in this case. Well, there was manipulable conduct that was followed by the district court. You can't get just a little bit of print. Yes, sir, I understand that. But when this court evaluates and disagrees with the district court's finding of intent and the level of intent, that needs to be something that's considered by the district court the next time around. All right, thank you. Mr. Oak. You're denying your time. Yes, sir, I'll take 10 minutes, and the co-counsel, Mr. Burroughs, will take five. May it please the court. My name is Ronald Oak, and together with Mr. Rudolph Sigismund, we represent Tom Mosey and the manufacturing partners of Sapir. I'd like to start off with the point about the antitrust and the patent unenforceability claim. They are substantially intertwined. Now, there was a suggestion during the argument and during the brief that it shouldn't have been necessary for us to maintain the unenforceability defense and the invalidity defense after the summary judgment of non-infringement was granted. That is incorrect. The summary judgment of non-infringement expressly did not cover Tom Mosey's 1996 activities, which DDI, Deffendants, claimed were infringing, and they claimed that they were damaged in excess of $10 million over those claims. If they would have succeeded on those claims, they would have bankrupted Mr. Mosey and his company. So it was absolutely necessary for the manufacturing parties to maintain the patent invalidity and patent unenforceability defenses, even though summary judgment of non-infringement had been granted on some activities. And all of the work that the manufacturing parties did on the antitrust claims, that's the same basis on patent invalidity and walker process fraud, proving the fraud. So substantial intertwining. Now, with regard to DDI's conduct in this case, with regard to the festival market sales, Your Honor, it has been deceitful in this case from beginning to end, from the patent office to the trial, that the patent office, Kirk Jones and Warren Shipley, failed to disclose the pre-critical date sales, even though they knew or should have known that they were highly material to patentability. They failed to disclose, and they received a patent. Then in litigation, Kirk Jones failed to disclose inventor notebook pages documenting the sales, and he received a preliminary injunction that flawed competition. Then in trial, Jones' testimony concerning the damaging entries in his notebooks was, quote, evasive and displayed a lack of candor, according to Judge Thrash. This patent should never have issued, the lawsuit should never have been filed, the preliminary injunction should never have been granted, and attorney's fees should have never been awarded. If there is ever a case for proper reward of attorney's fees under 285, this is that case. I'd like to first address exceptional case and the discretionary fee award to the manufacturing parties. Mr. Burroughs will address the fee awards to the distribution parties. Now, with regard to exceptional case, Judge Thrash based his exceptional case finding on inequitable conduct, not fraud. He's clear about that. He had previously written a lengthy and detailed inequitable conduct order, where he described the materiality of the festival market sales as high, and of course they were. When they were added to the prior art, they invalidated the patent. He also pointed out evidence upon which inferences of intent to deceive could be based. One inference was based on the following facts. Jones and Shipley knew the festival market sales taught serving free-flowing beads for consumption, yet they argued to the patent office that their method was patentable because the prior art that they chose to disclose did not teach serving free-flowing beads for consumption. Because they made this argument, it is clear that they knew or should have known the festival market sales were highly material to patentability. Now, this court has held that when a patentee knows or should know of the high materiality of a reference and fails to disclose it, a strong inference of intent to deceive exists. In this case, we have high materiality, strong inference of intent, so we have support for exceptional case. Now, in the brief and argument, Dippendatz, DDI, picks out a couple of statements in this court's first opinion and says that they contradict the exceptional case finding. But these statements must be placed in a proper context. The issue of exceptional case was not before this court in the first appeal. The only two issues involving intent were inequitable conduct and Walker process fraud. And in the first appeal, we submit this court was looking for a minimal threshold level of intent to support inequitable conduct, and it found it. Mr. O'Connor, I understand you're defending the award of attorney fees. Should $20,000 in fees to the manufacturing bodies be treated differently? The $20,000 for the antitrust? Yes. Well, we believe that that was substantially intertwined with the work. It was dismissed, right? Yes, yes. But we believe that that work, that $20,000 of work for the antitrust, that was substantially intertwined with the work done on patent invalidity in Judge Thrash Sobel. Now, on- Is that a question of fact or a question of law? Well, I would say that it was the issue of whether it's intertwined. May I say it would be a mixed question of law and fact. I mean, we've got factual findings, obviously, the judge has to rely upon, but the ultimate conclusion is one of law on intertwining. I thought it was brief, Mr. Warren, and you didn't know you were formally here, but it's been the case. But separating the $20,000 has not been intertwined. Your answer is they are. They are intertwined. The Dippin' Dots did not object to the manufacturing party's fees at all, not to the reasonableness or not to the amount of hours. The only objection they made, $20,000 in antitrust, they felt they ought to be carved out. We said they're substantially intertwined. You're now giving him an opportunity to rebut that point with a few issues. Okay. You're representing the manufacturer. Yes, yes. The distributor's part of that would be your public comment. And Mr. Boyles will address that. But doesn't it matter that they actually prevailed and won on that issue, on the counterclaim? Well, I would say under the facts of this case, no, because they brought this lawsuit, and the Walker process counterclaim was part of our defense to the lawsuit. We were defending the lawsuit in the time that we spent proving but-for materiality on Walker process fraud. That is the same time that we spent proving patent invalidity, patent unenforceability. So the amount of time is intertwined. Back to what this court stated about the Walker process fraud. This court was looking for evidence of intent that was established separate from materiality in the Walker process fraud case, in the first opinion. This court did not find that. However, we submit that this court was not looking for inferences of intent that were adequate to support an exceptional case finding. And there is nothing in this court's first opinion that contradicts or refutes in any way the strong inference of intent that arises when a patentee knows or should know of high materiality of a reference and fails to disclose it. An additional point, importantly, the non-disclosed references were pre-critical date sales. And this court has stated that the non-disclosure of pre-critical date sales can be particularly egregious because an examiner has no way of knowing about them unless they are voluntarily disclosed. Well, if you are inferring intent, as did the district court, there's no smoking gun here. And it's certainly possible for an independent inventor to not realize that a sale might have been made about it. Well, usually in a case where you're in equitable conduct, there's not a smoking gun. You're inferring inferences of intent from circumstantial evidence. They had an opportunity during the trial to explain to Judge Thrash why they didn't disclose references they knew were highly material. There is no objective evidence of good faith that came out during the trial that occurred back then. They simply didn't satisfy their verdict. If I remember the record correctly, were evidence of sales submitted to the patent office to support the non-obviousness argument subsequent? And they only showed the sales within a year instead of the ones before one year? That's correct. And that was another additional inference of intent that both the trial court recognized and this court recognized. There's another. There are several inferences of intent. Well, they recognized that sales were relevant. Correct. Yes, Your Honors. Now, I've limited time, but Judge Thrash, he didn't – they complained that he did not adequately explain his award. But he did what many courts do, refer back to earlier orders for the explanation. In those earlier orders, there is adequate support for all of his findings. Thank you, Your Honor. Thank you. Thank you, Your Honor. May it please the court, my name is Keith Broyles from Austin and Byrd, and I represent the appellee Frosty Dots Distribution. I want to first address the court's questions about whether the antitrust part of this case and the patent issues in this case were intertwined. Now, initially, Mr. Warren makes the presentation that, well, apparently the patent work on this case comes for free when you have a walker process claim. And we all know that that's simply not true. They are so intertwined in this case, and the facts bear that out, and that's what Judge Thrash said in his order. And the Hensley decision from the Supreme Court is very enlightening on this point. Depedos challenges $157,000 in our fees related to the antitrust claim. But the Hensley decision says that where two claims are interrelated, then counsel is entitled to recover a full fee based on the success in the lawsuit. Because when you look at interrelated claims like we have here, the Supreme Court recognizes that counsel's time will be spent on the lawsuit generally. And it's very difficult to cut fee records up on a claim-by-claim basis when they're so related. And the district court judge cited this court's decision in the Stickel case in saying these are clearly intertwined here. And I believe under these circumstances that a full fee recovery is appropriate. Well, they were. They were set apart. You have to agree that that is a realistic proposition. That's correct, Judge Mayer. We, to be quite candid, we said, using billing judgment, we went through our records and set aside, using above-board tests, $157,000 in fees, in large part because we wanted to avoid a remand in this case should the court disagree that we were entitled to those fees. Are fees relating to a relevant market, which of course is part of an antitrust claim, are those intertwined with inequitable conduct, or were those not part of the work here? We submit that they were intertwined, Judge LaGuardia, simply because the defendant argued non-obviousness. And to do that, they had to argue about the characteristics of their product. And so the market definition, you also look at the product characteristics in making that argument. And so therefore, we submit that those fees are also intertwined. Now, can we rely on the dominant partition that you set up? Otherwise, didn't you think it would have a reason to have it done? And maybe it's a good deed for the public. Can we rely on that? I mean, you didn't break it up. Well, if this court disagrees that those fees are appropriate, yes, you can rely on the partition. There's no question. But we submit that if you look at the Supreme Court's case, in the Hensley case, they envision this exact scenario happening. In fact, if you look at footnote 11 in that case, they say, Nor is it necessarily significant that a prevailing plaintiff did not receive all the relief requested. For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee reward based on all the hours reasonably expended if the relief obtained justified the expenditure of attorney time. Now, this case has been going on for 12 years. We submit that a finding of invalidity, non-infringement, and inequitable conduct that rendered this patent unenforceable, certainly the time spent on doing that justifies a fee award that is below what the AIPLA says a patent case of this size normally takes. We put that evidence in front of the district court. That's what he had to look at. And we submit under those circumstances, certainly he did not abuse his discretion in giving a fully compensatory fee. Mr. Boyles, there's an issue as to whether or not this court has jurisdiction over the 2005 fees or whether you raise that issue. Why don't we have jurisdiction? Well, I believe that perhaps that – well, they argue below that it's a Rule 60 argument. And they say – 60B argument, pardon me. They say that that award was based on the Walker process, but it wasn't based on a Walker process finding or a reversal. Judge Thrash made clear that his 285 award originally was based on the inequitable conduct finding. So we submit that what they're trying to do is they're trying to substitute Rule 60B for a timely appeal. And so we believe that the 285 award is intact. It's over. It's not appealable. It's already satisfied, in fact. And so we believe their argument on that is quite simply meritless. The 2005? The 2005 award. All right. Thank you. Thank you, Your Honor. Mr. Walker. Essentially three points. Yes, the manufacturing parties did ask for $1.9 million under the antitrust statute the first time around. The second time around, Judge Thrash awarded the same amount, $1.92 million, under the Patent Act. As far as counsel's description of the Painsley decision, I don't agree. I think the Court made it very clear that the number of claims you win or lose has to be taken into consideration, even if those claims are intertwined. And arguably, here's what we have. Last point. We've been talking a lot about balancing patent claims and antitrust claims and patent claims don't come for free. It is our first argument that based upon the district court's order in ignoring this court, even the exceptional case finding cannot stand. Thank you. Thank you. Thank you, sir.